797 P.2d 1233

**STATE of Arizona, Appellee,**

v.

**Clint Ray HOAG, Appellant.**

**No. 1 CA–CR 89–896.**

Court of Appeals of Arizona,
Division 1, Department B.

Aug. 28, 1990.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Chief Counsel, Crim. Div., and Dennis Staffelbach, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Stephen R. Collins, Deputy Public Defender, Phoenix, for appellant.

OPINION

JACOBSON, Judge.

The sole issue in this appeal is whether mere unauthorized entry into a vehicle or other such trespassory conduct constitutes "control" over that vehicle sufficient to support a conviction for unlawful use of means of transportation in violation of A.R.S. § 13–1803. We hold that it does not, and thus we reverse.

*Factual and Procedural Background*

On April 26, 1989, defendant entered a 1971 Volkswagen van owned by George Cooper through an unlocked passenger door. A security guard observed defendant pulling at a CB radio mounted under the dashboard.

Defendant was arrested and charged with burglary in the third degree, a class 4 felony. He entered into a written plea agreement, in which he agreed to plead guilty to unlawful use of means of transportation, a class 6 undesignated offense. Based solely upon the observation of the security guard, the court found that there was a factual basis for the plea and that it was voluntarily and intelligently entered. The court accepted the plea and placed defendant on three years probation, with the offense to be designated a misdemean-

or upon successful completion of his probation. Defendant appealed, arguing that, since the factual basis failed to show that he exercised control of the vehicle as a means of transportation, a conviction for unlawful use of means of transportation is not supported.

### Discussion

A.R.S. § 13–1803(A), which defines the crime of unlawful use of means of transportation, provides:

> A person commits unlawful use of means of transportation if, without intent permanently to deprive, such person knowingly *takes unauthorized control over* another's means of transportation. (Emphasis added.)

A.R.S. § 13–1803 replaced former A.R.S. § 13–672(C), which prohibited conduct commonly known as "joyriding."[1] *State v. Cain,* 27 Ariz.App. 441, 555 P.2d 1129 (1976). Defendant argues that the "control" necessary to violate the present statute must be associated with use of the vehicle as a means of transportation, that is, "joyriding." On the other hand, the state contends that mere unauthorized presence in another's vehicle is sufficient "control" to form the factual predicate for a violation of A.R.S. § 13–1803.

Because there are no cases in this jurisdiction construing "control" in the context of § 13–1803, we consequently look to the policy behind the statute and its historical background in order to resolve this interpretation question. *Martin v. Martin,* 156 Ariz. 452, 457, 752 P.2d 1038, 1043 (1988); *Calvert v. Farmers Ins. Co. of Arizona,* 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985).

The term "joyriding" has no distinct legal meaning. *See* Annotation, *Automobiles: Elements of Offense Defined in "Joyriding" Statutes,* 9 A.L.R.3d 633 (1966 & Supp.1989). In Arizona, the key differ-

ence between this offense and theft, as proscribed in A.R.S. § 13–1802, is the temporary nature of the deprivation. R. Gerber, *Criminal Law of Arizona,* § 13–1803 at 257 (1978). The former "joyriding" statute was designed to remedy those evils associated with temporary dispossession of a vehicle. As stated by the drafters of the Model Penal Code:

> The typical situation dealt with is the "joyride," *i.e.,* the taking of another's automobile without his permission, not for the purpose of keeping it but merely to drive it briefly.... Such joyriding jeopardizes the vehicle itself, a considerable amount of temptingly mobile property, and, since the circumstances are conducive to irresponsible behavior in the operation of the vehicle, jeopardizes the lives of the riders and others.

*Model Penal Code and Commentaries,* § 223.9 at 271 (1980).

The question remains whether the legislature in replacing the former statute with § 13–1803 intended to eliminate the connotations associated with "joyriding" and substitute mere presence in the vehicle as the conduct necessary for a violation of the new statute. We find persuasive cases from other jurisdictions which have addressed this issue of whether trespassory conduct is sufficient to constitute unauthorized control in the context of similar statutes. In *State v. Douthitt,* 33 Or.App. 333, 576 P.2d 1262 (1978), the court construed an Oregon statute which made it a crime to, among other things, "exercise control over" a vehicle without the consent of the owner. In that case, the defendant had entered a parked vehicle, rifled the glove box, and put on a coat that was lying in the back seat. He was arrested and charged with "unauthorized use of a vehicle" in violation of ORS 164.135. The court rejected the state's argument that "exercises

---

**1.** Former A.R.S. § 13–672 provided, in pertinent part:

> A. It shall be unlawful for any person to take from another a motor vehicle or motorcycle with the intent to deprive either temporarily or permanently such other person of such motor vehicle or motorcycle.
>
> ....

> C. A person found guilty of intent to deprive temporarily another of his motor vehicle or motorcycle is guilty of a criminal offense punishable by imprisonment in the county jail for not more than one year, or a fine of not more than one thousand dollars or both.

control over" means mere entry into a vehicle, holding:

> We conclude that [ORS 164.135] requires that the actor manifest an intent to deprive the rightful possessor of possession or to otherwise interfere with the rightful possessor's use of the vehicle, but simply does not cover a naked trespass to the vehicle.... In this case the only acts affecting the vehicle were opening the locked door and rifling the glove box. Considered as separate acts or a single act, they do not constitute a sufficient exercise of control over the vehicle such that defendant has manifested an intent to affect the rightful possessor's relationship to the automobile, i.e., there was no intention to use the vehicle.

576 P.2d at 1265.

Similarly, in *People v. Butler*, 119 Misc.2d 1071, 465 N.Y.S.2d 477 (Sup.Ct. 1983), the defendant broke into a parked vehicle and was observed kneeling on the front passenger seat facing the dashboard. He was charged with unauthorized use of a vehicle, which included "exercis[ing] control over ... or otherwise us[ing]" the vehicle. That court held that, in order to violate the unauthorized use statute, the defendant must exercise some degree of control over the confines of the car or the car's mechanism. 465 N.Y.S.2d at 479. The *Butler* court stated:

> In the instant case the defendant did not obtain the means to set the car's mechanism in operation, nor is there any evidence, such as possession of a tool designed to bypass the car's ignition system, of an intent to operate the car. The defendant's presence in the car was transitory and did not, beyond the fact of his unauthorized entry, exclude the proprietor from use or occupancy of the car, even temporarily.

*Id.* at 479. Noting *Douthitt* with approval, the *Butler* court held that trespassory conduct alone does not amount to unauthorized use:

> Accordingly, the court holds that the defendant's conduct in unlawfully entering the automobile and remaining therein briefly without otherwise tampering with

the car's operative mechanism did not constitute an unauthorized use of the automobile within the meaning of the statute.

*Id.* at 480. *See also People v. Murray*, 143 Misc.2d 509, 541 N.Y.S.2d 331 (Crim.Ct. 1989) (defendant's sitting on victim's motor scooter did not constitute an unauthorized use, absent evidence of at least that degree of control as manifested by present ability to set the vehicle in motion).

The underlying rationale of these cases is that the "control" necessary to constitute a violation must be associated with the use of the vehicle as a means of transportation. Does the "control" in the Arizona statute mean something else? There is no doubt that the scope of conduct prohibited under former § 13–672(C) was broadened by the enactment of § 13–1803; under former § 13–672(C), a defendant had to "take" the vehicle, whereas under § 13–1803, a defendant need only "take unauthorized control over" it—thus suggesting that "asportation" or movement of the vehicle is no longer required. R. Gerber, *Criminal Law of Arizona, supra*. *Cf. People v. Roby*, 39 N.Y.2d 69, 382 N.Y.S.2d 739, 346 N.E.2d 540 (1976) (defendant and companion in another's car were guilty of unauthorized use where driver behind steering wheel was attempting to put key in ignition). However, there is nothing in the legislature's enactment of § 13–1803 to suggest that it intended to extend the statute's scope beyond its rationale, which is to proscribe conduct associated with transportation which temporarily jeopardizes both the vehicle itself and the lives of the riders and others. As stated in the comments to the Model Penal Code:

> A man who climbs into a parked truck in order to conceal himself from the weather or to sleep is not using the vehicle in any way that involves the dangers of "joyriding."

*Model Penal Code and Commentaries*, § 223.9 at 273. Thus, while a defendant may be found guilty of unauthorized control where there is no asportation or movement of the vehicle, there must be at least

some evidence of an intent to use the vehicle as a means of transportation.[2]

In our opinion, *State v. Marquez*, 135 Ariz. 316, 660 P.2d 1243 (App.1983) does not compel a contrary conclusion. In *Marquez*, the defendant, a passenger in a stolen vehicle, argued that his mere presence in the vehicle did not give police probable cause to arrest him for unlawful use of means of transportation, pursuant to A.R.S. § 13–1803. This court disagreed, holding that "individuals involved in joy-riding offenses, whether they be passengers or drivers, are liable to prosecution." *Id.* at 319, 660 P.2d at 1246. However, in that case, the intent to use the vehicle as a means of transportation was not an issue: the evidence indicated that the vehicle had been stolen and was in operation when stopped by police. *Id.* at 318, 660 P.2d at 1245. There is no such evidence of intent here.

The state argues that the interpretation of "control" adopted in *State v. Coleman*, 147 Ariz. 578, 711 P.2d 1251 (App.1985) should be applied here. In that case, the victim's townhouse had been burglarized and several items of personal property taken. The defendant was charged with both burglary and theft. The defendant's fingerprints were found on a section of glass apparently removed from a front window, but none of the missing property was found in his possession. At issue was whether the defendant had acquired control over the missing items of property to support a conviction for theft under § 13–1802. This court held that the intent to control could be inferred from the unauthorized entry, the absence of the victim's property, the presence of the defendant's fingerprints in a place inaccessible to the general public, and the absence of any other explanation. *Id.* at 581, 711 P.2d at 1254.

In reaching its holding, the *Coleman* court intimated that mere unauthorized entry alone might permit a reasonable infer-

ence of theft, and hence control over property under § 13–1802. *Id.* As authority for this proposition, the *Coleman* court relied upon *People v. Toolate*, 101 Ill.2d 301, 78 Ill.Dec. 153, 461 N.E.2d 987 (1984). In *Toolate*, the defendant was charged with burglary with intent to commit rape. The Illinois court, after discussing the lack of any evidence that the defendant intended to commit a rape after his unauthorized entry into the victim's home, contrasted the proof necessary to show an intent to commit a theft with that necessary to show intent to commit a rape. In so doing, the court noted:

> In the absence of inconsistent circumstances, this court has held that proof of unlawful breaking and entering is sufficient to infer the intent to commit theft.... However, breaking and entering cannot be used to infer an intent to commit any other felony.

78 Ill.Dec. at 156, 461 N.E.2d at 990 (citation omitted).

*Toolate* does not equate an unauthorized entry with "control." Rather, it merely holds that an unauthorized entry may support an inference that the entry was made with intent to commit a theft. Consequently, the inference drawn by *Coleman* is unwarranted. In fact, *Coleman* itself does not rest upon a finding that "control" under A.R.S. § 13–1802 is satisfied by a mere unauthorized entry. *Coleman* instead holds that control of another's property may be inferred from an unauthorized entry by the defendant *plus* other evidence, including the fact that the victim's property is missing. *Coleman* does not purport to define "control" by an unauthorized entry standing alone.

■ In our opinion, the legislature has clearly expressed its intent that "control" in § 13–1803 prohibiting unlawful use of means of transportation means more than "unauthorized entry." We hold that A.R.S. § 13–1803 prohibits taking unauthorized

2. Gerber notes that, because asportation is not required under § 13–1803, "liability may attach as soon as the actor sits behind the wheel." Gerber, *Criminal Law of Arizona, supra.* This analysis is not inconsistent with our holding

insofar as sitting behind the wheel with the requisite intent to use the vehicle as a means of transportation could constitute a violation of § 13–1803.

control of another's means of transportation when one intends to use the means of transportation as such. One who merely enters another's vehicle without such an intent may be guilty of some crime, depending upon his conduct inside the vehicle, but he is not in violation of § 13–1803. In this case, there is no evidence that defendant had any intent to operate or otherwise use the vehicle as a means of transportation, and therefore there is no factual basis for his plea. *State v. Garcia*, 156 Ariz. 381, 383, 752 P.2d 34, 36 (App.1987); Rule 17.3, Arizona Rules of Criminal Procedure.

The judgment and sentence are reversed, the matter is remanded, and the original charge of burglary is reinstated.

LANKFORD and PATTERSON, JJ., concur.

NOTE: The Honorable Cecil B. Patterson was authorized to participate in this appeal by the Chief Justice of the Arizona Supreme Court pursuant to Ariz.Const. Art. 6, § 3.